(No. 75-CC-0004-

ALICE WALKER, Special Administratrix of the Estate of William C. Reed, Deceased, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 16, 1982.*

LAW OFFICES OF JOY M. FEINBERG (JOY M. FEINBERG AND CHERYL WEISSMAN, of counsel), for Claimant.

TYRONE C. FAHNER, Attorney General (PAUL M. SENG-PIEHL, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

This is an action, brought by Alice Walker, special administratrix of the estate of William C. Reed, for personal injuries to decedent William C. Reed to have been the result of negligence of the Illinois Public Health Hospital on July 4, 1973.

Most of the facts of this case are undisputed. On July 1, 1973, Claimant was approximately 76 years of age. He was in good physical condition and lived with

his niece, Alice Walker, in Chicago. On July 1, 1973, Claimant left his home to take a walk and was found by a Chicago police officer about 2 1/2 miles from his home. When found by the officer, Claimant was incoherent, could not remember things and could not give "straight" answers to questions. That evening, he was admitted to the Illinois Public Health Hospital in Chicago. He was diagnosed, at that time, as senile and confused and was placed in the hospital's geriatric unit on the fifth floor of the building.

On July 2, 1973, Claimant's niece, Alice Walker, and her husband, John Walker, and her brother-in-law, Lewis Walker, came to the hospital to confer with Margaret Reidy, a social worker employed by the hospital, as to the condition of Claimant. When the elevator doors to the fifth floor opened, they saw Claimant standing in front of the elevator and making motions which expressed an intention to get in the elevator. Claimant did not recognize his niece. Claimant was dressed in street clothes in accordance with hospital policy.

At the conference with Margaret Reidy, Alice Walker told Reidy that Claimant had been standing by the elevators when Alice Walker had arrived. Alice Walker further notified Margaret Reidy that Claimant had wandered away from his home on seven prior occasions in the last week and that Claimant must be watched carefully because he was "quick" for his age and he would get away. Reidy told the Walker family that Claimant would be watched, and Reidy immediately told the charge nurse that Claimant had a tendency to run away.

Upon leaving the fifth floor geriatric unit, the Walker family found Claimant near the elevator again. Alice Walker took her uncle to the nurses' station and told the nurse that Claimant had been standing in front of the elevators again trying to get out and that Claimant was

saying that he wanted to go home. Alice Walker also told the nurse that Claimant needed to be watched constantly because he was swift.

Margaret Reidy noted in her "Coordinator's Worksheet" that Claimant had a habit of wandering.

At 3:30 p.m. on July 4, 1973, Nurse Chua McCall, who was on duty, noticed Claimant walking toward the elevators saying he wanted to go home. Nurse Chua escorted Claimant from the elevator area and brought him to the bathroom. Fifteen minutes later, Nurse Chua checked on Claimant who was still in the bathroom. At the time, all of the nurses except for one nurse at the nurses' station were fully occupied feeding the patients. Nurse Chua McCall then noticed the Claimant walk toward the dining room and thereafter did not notice the Claimant.

Within a half hour later, Nurse Chua noted that Claimant was missing. A search was immediately instituted which, one hour later, at 5:30 p.m., resulted in a hospital employee finding Claimant lying on the ground outside the hospital's east windows. A window on the third floor, east side, was found to be open, and the venetian blinds of the window were torn. The window had no lock, no bars and no protective screens.

The hospital consists of eight floors. Only the fourth and fifth floors held patients, and those floors were the only floors which had protective bars on all the windows. The third floor was used for some storage but was basically empty. Three elevators serviced the building. On the fifth floor, the elevators could be summoned only by buttons located behind the nurses' station which was about 20 feet from the elevators. A stairwell door was located next to the elevators. The stairwell had a buzzer which was activated each time the door was opened.

There were no guards or other employees located next to the elevators and stairwell.

Victor Engandella, geriatric program director at the Illinois Public Health Hospital, testified that geriatric patients often mentally wandered in and out of periods of confusion and that physical wandering was a characteristic of geriatric patients. He knew that it was not uncommon for patients to step or attempt to step on the elevator when it opened as visitors or hospital personnel arrived at the fifth floor. He testified that occasionally geriatric patients were found to have wandered off the fifth floor and, on one occasion, had been able to leave the hospital building.

Frank Brown, Claimant's expert witness, testified that he had been a hospital administrator for 40 years, including hospitals that had geriatric wards. He testified, in answer to a hypothetical question, that it was foreseeable that a confused geriatric patient with a longing to go home might be able to leave the ward and, further, that the security system of the hospital was inadequate, relying too much on human control and not enough on mechanization. He testified further that similar facilities in Chicago in 1973 had a much higher degree of mechanized security.

On the issue of liability, from the evidence it is clear that the injury to Claimant was foreseeable to the Respondent. There were repeated warnings to Respondent's employees that Claimant was "quick" and agile and prone to wandering. Indeed, the very reason Claimant was brought to the hospital was because of his wandering. It was certainly foreseeable that such a person, if not adequately protected, would attempt to escape from the fifth floor.

Respondent argues that it was not foreseeable that

Claimant would escape to the third floor and fall out an unlocked window. In the case of *Neering v. Illinois Central Railroad Company* (1943), 383 Ill. 366, 50 N.E.2d 497, the Court restated the well-known rule that it is not essential for foreseeability that the person charged with negligence should have foreseen the precise injury which resulted from his act.

Thus, in the instant case, it was foreseeable that Claimant would attempt to escape, and such escape by a senile, elderly and sometimes confused person might very well result in his harm or injury to him. It is not necessary for Respondent to have foreseen the exact circumstances of the rendering of such harm for the harm to have been the proximate result of negligence. Respondent was negligent in failing to adequately protect Claimant from his tendencies. The fact that Claimant was found by Claimant's relatives near the elevators on two occasions and returned by the relatives shows that it was not Respondent's staff who were able to watch and control Claimant but, at least on those occasions, it required the intervention of Claimant's relatives to protect Claimant. The nurses on duty near the elevator and near the stairwell doors had numerous other duties to perform at the same time and were obviously unable to notice patients near the elevator doors. The easy availability of the elevators to Claimant, under the circumstances of Respondent's knowledge of his tendencies, was negligence.

Similarly, the stairwell door was protected only by a buzzer activated by the opening of the door. There was testimony that at the time, hospital personnel were required to run after patients down the stairwell after hearing the buzzer. Surely a more efficient security device or a locked stairwell door would have prevented patients from leaving the fifth floor.

It is by compelling circumstantial evidence that this Court concludes that the injury to Claimant was caused by his falling or jumping through the third floor window. The window was open, although it normally should have been closed, the blinds were torn, and Claimant was found beneath the window with severe injuries which could only have resulted from a fall from a great height. In the opinion of the Court, given the inadequacies of the security system on the fifth floor, Respondent was negligent in not having locks or bars on the third floor into which escapees could be expected to travel.

It is therefore the Court's opinion that the Respondent failed to use due care in rendering its treatment of Claimant and that Respondent's negligence was the proximate cause of Claimant's escape and subsequent injury.

Claimant, when found, was bleeding from his mouth and right leg, through which his bone was protruding. The right leg was amputated in August 1973 as a result of the injury. Claimant also suffered a fracture of his left ankle and a compression fracture to his second lumbar vertebra. He was rendered unable to physically take care of himself and could only move about by crawling. He was crippled in that manner for the remaining three years of his life.

Claimant incurred approximately $8,000.00 in hospital, nursing home and other items of special damage, all of which have been paid by insurance.

The injury to Claimant was extremely severe, but the damages to be awarded must take into consideration the age of Claimant and the amount of time he was required to suffer from said injuries.

Taking the severity of the injuries and the time of the suffering into consideration, Claimant is hereby awarded the sum of $30,000.00.